## PEAVY *et al. v.* DURE.

1. Where a testator, in his will, directed the executor to raise a given sum from the assets of the estate and invest the same in a home for the testator's daughter, Mrs. R., and declared that he gave said sum, or said place, to the person named as executor "in trust for the sole and separate use of my said daughter, . . for the life of my said daughter, remainder to her children," and, after the will was probated, the person named as executor and trustee invested a portion of such fund in land and took from the vendor a deed to the same, wherein the grantor, without referring in any manner to the will or the trust therein declared, conveyed the premises to the grantee as trustee for Mrs. R. and children, the legal title to such land was held by the grantee under the trust created by the deed, and not under the one declared by the will. Consequently, when the trustee subsequently applied to the judge of the superior court for leave to sell the land and reinvest the proceeds of the sale, and in his petition did not refer to the will or the trust therein declared, but represented himself as trustee for Mrs. R. and her children, naming such children as beneficiaries of the trust, the trust estate which was brought before the court and with which it dealt in granting an order, or decree, in accordance with the application of the trustee, was the one created by the deed.

2. As, under a deed of the character above indicated, the interests of the beneficiaries of the trust estate thereby created in the land is equitable, instead of legal, the superior court upon proper proceedings by the trustee, during the existence of the trust estate, has jurisdiction at chambers, and even in vacation, to authorize the trustee to sell the land and reinvest the proceeds of such sale.

3. Such an order or decree, being granted by a court of general jurisdiction, has all the sanctity which attaches to a formal judgment, and every presumption of validity is to be indulged in its favor. It can not, therefore, be held to be void because the record of the proceedings upon which it was based does not affirmatively show that service upon the minor beneficiaries of the trust estate was duly perfected.

4. While the title to land purchased as indicated in the first headnote was, notwithstanding the manner in which it was conveyed by the grantor to the grantee, in equity held by the grantee subject to the provisions of the will, this was a secret equity which could not be asserted against one who, without notice thereof, or any information which could be considered equivalent to such notice, purchased the land, relying, in good faith, upon the title which passed to the trustee under the deed and the order or decree of the court authorizing him to sell the land.

5. In no view of the evidence were the plaintiffs entitled to recover, and therefore the trial judge properly directed a verdict for the defendant.

Argued January 13,—Decided July 22, 1908.

Complaint for land. Before Judge Felton. Bibb superior court. February 14, 1907.

Mary F. Peavy, Andrew Reynolds, Lee Reynolds, Georgia Slade, and Mattie Thomas brought an action at law against Leon S. Dure, to recover a certain tract of land in Bibb county. In the petition it was alleged that the tract sued for was "a part of a certain one-acre lot sold by E. M. Calhoun to Wm. E. Jenkins, trustee of Mary A. Reynolds and her children." Plaintiffs alleged, "that the abstract of their title to said lot is the will of Elias C. Jenkins, on record in the office of ordinary, making W. E. Jenkins trustee of Mary A. Reynolds for and during her natural lifetime, and at her death the property to belong to her children;" that W. E. Jenkins bought the lot as trustee under said will and held the same during the life of Mary A. Reynolds, and she died in June, 1905, leaving plaintiffs as the remaindermen, they being her only children," and that defendant "holds said lot under the common grantor, W. E. Jenkins." By an amendment it was alleged that Mary A. Reynolds went into possession of the land under the deed from E. M. Calhoun to W. E. Jenkins, trustee. The defendant, by his answer, denied that plaintiffs had any right or title to the land. He alleged, that the will of Elias C. Jenkins did not devise or refer to this land; that W. E. Jenkins did not purchase it as trustee under the will, and did not so hold it, and defendant did not hold under him as trustee under the will; that W. E. Jenkins purchased the land from E. M. Calhoun, taking a conveyance which vested the title in him as trustee for Mary A. Reynolds and her children as joint usees; that in 1881 said Jenkins, as trustee for Mary A. Reynolds and her children, applied to the superior court for leave to sell the land, and obtained an order of the court authorizing such sale, which order was regularly granted in term time,

with the express assent of Mary A. Reynolds and the guardian ad litem of the children; and acting under and by virtue of such order, Jenkins, as trustee, sold and conveyed the land to Nancy E. Hendricks, under whom defendant holds, and vested the legal title in her. The defendant also alleged that at the April term, 1891, of the court, W. E. Jenkins applied to the court to allow and confirm the sale and conveyance to Nancy E. Hendricks, which application was personally served upon the plaintiffs, and a guardian ad litem was appointed for Andrew and Robert Lee Reynolds, the only ones who were then minors; and that, with the expressed assent of the guardian ad litem and without objection from any one, the court, in term time and in open court, passed an order ratifying and confirming such sale and the acts of the trustee in reinvesting the proceeds thereof. He further set up title by prescription.

Upon the trial Mrs. Peavy, one of the plaintiffs, testified: "The plaintiffs are all children of Mary A. Reynolds, who died in June, 1905. Mary Reynolds, my mother, lived on the land sued for, it being a part of the acre bought by W. E. Jenkins, her trustee, from E. M. Calhoun. The children named in the orders for sale and confirming the sale are the plaintiffs, except Willie Reynolds, who died in childhood. This lot sued for is a vacant lot. My mother left no . . . children living when she died, other than the plaintiffs." The plaintiffs introduced the will of Elias C. Jenkins, stating that they relied only on the fourth item thereof. This item was as follows: "It is my will further that my executor hereinafter named shall at his discretion, and as soon as convenient, out of the balance of my estate, having special reference to my notes and accounts and my unsold lots on Bassitt's hill, raise one thousand dollars and invest it in a home for his sister Mary A. Reynolds. If he and she agree upon a place that shall cost less than one thousand dollars, then she is to have the balance of that sum in money. It being my desire and I hereby give said one thousand dollars (or the said place and said money balance) as well as the remainder above provided for my daughter in the Home Place after her mother's death to my son William E. Jenkins in trust for the sole and separate use of my said daughter, freed from the debts or liabilities or control of her present or any other husband, for the life of my said daughter, remainder to her children, with this proviso as to the said one thousand dollar bequest, viz.: that

if said balance of my estate from which it is to be raised should turn out less than three thousand dollars, then my daughter is to receive one third of what said balance of my estate may turn out to be worth." It was also shown that W. E. Jenkins was executor of the will, which was probated on August 30, 1869. The plaintiffs introduced a deed from E. M. Calhoun to "W. E. Jenkins, trustee for Mary A. Reynolds and children," dated November 30, 1869, and duly recorded, conveying to "W. E. Jenkins, trustee as aforesaid, his successors and assigns," the one-acre lot of which the tract sued for is a part. Counsel representing the parties agreed, in writing, "that W. E. Jenkins as executor, or as trustee, under the will of Elias C. Jenkins, his father, . . took out of the funds of the estate of his deceased father the sum of five hundred dollars, and invested it in the one-acre lot of which the parcel of land in dispute is a part, and took the deed to the same, by virtue of said purchase, from E. M. Calhoun." This agreement was introduced in evidence.

The defendant introduced, from the minutes of Bibb superior court, the application to the judge of that court, of Wm. E. Jenkins, as trustee for Mary A. Reynolds and her children, for leave to sell, for the purpose of reinvestment, the one-acre lot purchased by him from E. M. Calhoun, the order upon such application, appointing a guardian ad litem for the children, the acceptance of the person so appointed and his approval of the proposed sale, and the order of the court authorizing the sale and reinvestment. It was agreed that the children named in the order for sale were the plaintiffs in the present case, except Willie Reynolds, who died in childhood. The defendant also introduced the petition of the trustee, dated May 23, 1891, for a confirmation of the sale of the trust property under the order of November 18, 1881, the petition reciting the proceedings which resulted in such order, and that "it does not affirmatively appear from the record of said proceedings . . that service was ever had on said children as provided for by law, and to this extent petitioner apprehends that the title to this property is defective;" that the property was sold in good faith, the purchase-money paid, the same being a fair price for the property; that the "lot is now owned by J. J. Cobb," and that the petitioner believed that the "owner of said property should be protected." The petition stated the names and ages of the

living children of Mrs. Reynolds. The prayer was that a decree be taken, after proper service upon the minors, "removing the doubt and uncertainty about the title to said land, confirming and ratifying the acts of your petitioner as trustee as above set forth, and divesting all title out of Mary A. Reynolds and her children, and vesting the same in J. J. Cobb, the present owner." The whole record of this proceeding was introduced, from which the following facts also appeared: There was personal service upon Mrs. Reynolds and all her living children. A guardian ad litem was appointed to represent two of the children who were still minors. He accepted the appointment and consented that the order authorizing the trustee to sell the property and reinvest the proceeds of sale should be confirmed. The court passed an order confirming the sale and the acts of the trustee as to investments, it being recited therein that evidence had been submitted to the court showing that the cestuis que trust had received the entire benefit arising from the sale of the property. The defendant testified that he purchased the land in dispute and paid for it; that he did not know or hear of the will of Elias C. Jenkins when he bought the land, and heard of it only when this suit was filed; that he never had the title examined and did not know that any money of the estate of Elias C. Jenkins went into this land.

Upon this evidence, the court directed a verdict in favor of the defendant, and the plaintiffs excepted.

*Marmaduke G. Bayne,* for plaintiffs.

*Nottingham & Cabaniss,* for defendant.

FISH, C. J. (After stating the facts.)

1, 2. Under the will of Elias C. Jenkins, the grandfather of the plaintiffs, the trust created was for the life-estate of their mother only, the remainder to her children being a vested legal remainder; for the estate in remainder was not conveyed to the trustee named in the will, and no duty in reference thereto was imposed upon him. *Luquire* v. *Lee,* 121 *Ga.* 624 (49 S. E. 834); *Smith* v. *McWhorter,* 123 *Ga.* 287 (51 S. E. 474, 107 Am. St. R. 85). As the trust was only for the life-estate, if the deed from Calhoun to the trustee, which was executed in 1869, had been in accordance with the provisions of the will, the trust, under the operation of the married woman's act of 1866, would have been executed when the deed was delivered to the trustee, if the life-

tenant then was, as seems highly probable from the evidence, of age, and if she were not, it would have become executed when she attained her majority. *Smith* v. *McWhorter,* supra. So, if the deed had followed the trust declared in the will, there would have been no trust estate for a trustee to represent in 1881, when the trustee applied for and obtained leave to sell the land in which he had invested the trust funds, and the order or decree of the court authorizing such sale would be void for want of jurisdiction over the subject-matter. But the deed from Calhoun to W. E. Jenkins, trustee, did not follow the provisions of the will, nor did it in any manner refer to the will, or indicate the existence of any other instrument whereby the grantee had been created a trustee. It must, therefore, be construed according to its own terms. So it was held in *Trammell* v. *Inman,* 115 *Ga.* 874, 877 (42 S. E. 246), where a deed to one who had by a previous marriage settlement been made trustee for a married woman merely described the grantee as trustee for such woman, without referring in any manner to the marriage settlement, or to any other writing by which he had been made trustee. The common source of title in this case is Calhoun, who in 1869 executed the deed to W. E. Jenkins, trustee for Mary A. Reynolds and children. The title to the land being in Calhoun at the time this deed was executed, when it passed out of him by that conveyance it passed to the grantee named therein as the grantor conveyed it to him. How did the grantor convey it to him? The conveyance was, as before stated, to W. E. Jenkins, trustee for Mary A. Reynolds and children. Before the adoption of our first code, such a deed might, under the ruling in *Trammell* v. *Inman,* supra, have conveyed the title to the grantee individually, the words "trustee for Mary A. Reynolds and children" being held to be descriptio personæ only. But as to a deed executed, as this one was, after the first code went into effect, the rule of construction is different, and such words are held to create a trust in favor of Mrs. Reynolds and her children in life when the deed is executed. For the law as declared by our successive codes is, that no formal words are necessary to create a trust, and whenever a manifest intention is shown that another person shall have the benefit of the property conveyed, the grantee shall be declared a trustee; and that "The appointment of a trustee, or any words sufficient to create a trust, shall operate to create a

separate estate." Civil Code, §§3148, 3150. The deed created a trust in favor of Mrs. Reynolds and her children as joint usees, as, but for the fact that the legal title was conveyed to a trustee, they would under the common law have been joint tenants, and under our law tenants in common, and tenants in common they would be whenever the trust became executed. *Loyless* v. *Blackshear,* 43 *Ga.* 327; *Lee* v. *Tucker,* 56 *Ga.* 9; *McCord* v. *Whitehead,* 98 *Ga.* 385 (25 S. E. 767). But only the children of Mrs. Reynolds who were in life when the deed was executed took any interest thereunder. *Hollis* v. *Lawton,* 107 *Ga.* 105 (32 S. E. 846, 73 Am. St. R. 114). Ordinarily this fact would be a very important and controlling one in the case; for although the plaintiffs proved that Mrs. Reynolds, their mother, was dead when the suit was brought, and that they were all of her children, except one who died in childhood, they failed to prove that they were all in life when this deed was executed, which was necessary in order for any of them to recover in a joint action, as all had to recover or none. In fact, the plaintiffs did not prove that any of them was in life when this conveyance was made; but the evidence offered by the defendant tended to show that two of them were. But we shall treat the case as if the plaintiffs were all beneficiaries of the trust created by this deed; for so it has been treated by counsel for defendant in error both in argument and brief; and the defendant introduced and relied upon the record of the proceedings upon the application of the trustee for leave to sell the land, and the record of the subsequent proceeding by him for a confirmation of such sale and the acts of the trustee thereunder, and it appears from these records that the trustee, in both these applications, represented himself as trustee for Mrs. Reynolds and all her children, and named all the plaintiffs as beneficiaries of the trust. Such a trust as the one created by this deed remains executory during the minority of any one of the cestuis que trust. *Askew* v. *Patterson,* 53 *Ga* 209; *Boyd* v. *England,* 56 *Ga.* 598; *McCrary* v. *Clements,* 95 *Ga* 778 (22 S. E. 675); *Clarke* v. *East Atlanta Land Co.,* 113 *Ga.* 21 (38 S. E. 323). Upon the face of the proceeding in 1881, wherein W. E. Jenkins, the trustee named in the deed, was granted leave to sell the land, it appears that the children of Mrs. Reynolds were then still minors, a guardian ad litem being appointed to represent them as such. This being true, the trust was then executory

the legal title to the land was in the trustee, and the interest of the beneficiaries therein was equitable. Therefore, the question whether the order authorizing the trustee to sell the property should be, as contended by plaintiffs in error, considered as an order granted by the court at chambers, or, as contended by defendant in error, as one granted in term and in open court, is immaterial, as the court at chambers, and in vacation, would have jurisdiction to authorize the sale of the equitable estate of minors. *Iverson* v. *Saulsbury,* 65 *Ga.* 725; *Obear* v. *Little,* 79 *Ga.* 386 (4 S. E. 914). See also, *Sharp* v. *Findley,* 71 *Ga.* 666; *Richards* v. *East Tenn., Va. & Ga. Ry. Co.,* 106 *Ga.* 614, 632 (33 S. E. 193, 45 L. R. A. 712).

3. This order, however, is attacked upon another ground. It is contended that it is void, because the record of the proceeding in which it was granted does not show any service upon the children of Mrs. Reynolds, who were the minor beneficiaries of the trust. It is true that it is not affirmatively shown by this record that, in this proceeding to sell the land, personal service was perfected upon these minor cestuis que trust. But in *Pease* v. *Wagnon,* 93 *Ga.* 361 (20 S. E. 637), wherein a trustee had been, in vacation, authorized to execute a mortgage upon the trust property, it was held that "a judge of the superior court, though acting in vacation and at chambers in passing lawful orders touching trust estates, acts as a court of equity, that court being always open. Hence, the presumptions which attach in favor of judgments and decrees by a court of general jurisdiction apply to orders of this kind." And in the same case, when it was again before this court, and when the record disclosed that the trust estate involved the interests of minor beneficiaries, it was held, that "such an order is not to be treated as void because it fails to recite who are the beneficiaries of the trust; nor because the record of the proceedings upon which it was based does not affirmatively show that service upon all parties at interest was duly made." *Wagnon* v. *Pease,* 104 *Ga.* 417 (30 S. E. 895). The order there in question was granted in February, 1885. In the opinion which was then delivered by Lumpkin, P. J., it was said: "Again, this order is attacked as void on the ground that as the record of the proceedings had before the judge does not show upon its face that service was perfected upon any of the cestuis que trust, and as

there was certainly no waiver of service by the minor beneficiaries, it follows conclusively that there was no service. If this conclusion of fact necessarily resulted from the premises stated, the particular contention now under consideration would undoubtedly be a good one. But, as will have been observed from the above statement of what this record shows, the real truth of the matter is, that while it does not affirmatively appear that service was in fact duly made, there is absolutely nothing going to show the contrary. In other words, the record is merely silent as to this point. This being so, everything is to be presumed in favor of the validity of the order of court, which, as ruled when this case first made its appearance here, is to be regarded as having all the sanctity which attaches to a formal judgment rendered by a court of general jurisdiction. It follows, of course, that in the absence of proof showing a failure to serve the parties interested in the proceeding, the presumption would be that every one to be affected thereby was properly before the court, else the order would not have been passed." This ruling, made by a full bench, was followed in *Reinhart* v. *Blackshear,* 105 *Ga.* 799 (31 S. E. 748), a case involving the validity of an order or decree authorizing the sale of trust property wherein a minor beneficiary was interested, the decision being concurred in by five Justices, Lumpkin, P. J., who delivered the opinion in the former case, being absent. The order involved in *Reinhart* v. *Blackshear* was granted in 1865, though no stress was placed, in the ruling made, on the fact that the order was granted prior to the act of 1876, codified in Civil Code, §4987; indeed, the date of the order appears not to have been considered in passing on the point involved. In the opinion as published, the date of the order is erroneously stated as being in 1895. In *Hughes* v. *Treadaway,* 116 *Ga.* 663 (42 S. E. 1035), at page 672, Justice Little, delivering the opinion, in discussing the necessity of a trustee bringing before the court all persons at interest, when he seeks the granting of an order authorizing him to exercise powers not conferred upon him by the instrument creating the trust, said: "This whole subject was carefully considered and ably discussed by Mr. Presiding Justice Lumpkin in the case of *Wagnon* v. *Pease,* 104 *Ga.* 417 [30 S. E. 895], in which prior decisions of this court bearing upon the question in hand were reviewed." The point now under consideration was

not involved in *Maryland Casualty Co. v. Lanham,* 124 *Ga.* 859 (53 S. E. 395). There a minor was sued and personally served. It appeared that no guardian ad litem had been appointed for him. It was held that the suit was not in a proper condition to proceed to judgment by default. Under the former decisions which we have cited, when the order or decree authorizing the trustee to sell the property was shown, the presumption arose that service had been duly perfected upon all the cestuis que trust; and as no evidence was introduced to overcome this presumption, such order or decree could not be held to be invalid because it was not affirmatively shown by the record that personal service had been perfected upon the minor beneficiaries of the trust in the proceeding in which it was granted. Therefore the sale of the land by the trustee to Nancy E. Hendricks, under whom the defendant holds, in pursuance of the order of the court, must be held to have been duly authorized; and hence the plaintiffs could not recover upon title to the premises in dispute acquired under the deed from Calhoun to W. E. Jenkins, trustee for Mary A. Reynolds and children.

While the defendants introduced—unnecessarily, we think—the record of the subsequent proceedings by the trustee for a confirmation of the sale of the land by him and his acts in connection therewith, there was nothing shown by such record which overcame the presumption of service upon the cestuis que trust in the former proceeding. It is true that the trustee, in his application for an order or decree of confirmation, stated that "it does not appear affirmatively from the record of [the former] proceedings, . . that service was ever had on said children as provided by law, and to this extent petitioner apprehends that the title to this property is defective." But this did not amount to an allegation, or an admission, that there had been no service upon the children of Mrs. Reynolds. It simply appears from these statements, made in an application filed in 1891, that the trustee, some ten years after the sale, had come to the conclusion that the sale might be defective, because the record of the proceeding in which it was authorized did not show service upon the minor beneficiaries of the trust, whether they were in fact served or not. Certainly it can not be held that the defendant, by introducing the record of the proceeding for a confirmation of the sale, in effect admitted

8

that there had been, in the original proceeding to sell the property, no service upon the minor beneficiaries of the trust. Without passing upon the extent to which defendant was bound by the allegations in the petitions for the sale and its confirmation, which were put in evidence by him, it may be safely stated that, upon the question as to such service, he was bound by the settlement of the trustee in the application for a confirmation of the sale only to the extent to which it went, viz., that it did not affirmatively appear that such service had been perfected. So, notwithstanding the introduction of the record in the proceeding to confirm the sale by the trustee, the defendant could still rely on the presumption, arising from the existence of the order or decree of the court authorizing the trustee to sell the property, that all parties at interest had been duly served in the proceeding in which it was granted. For this reason we have not deemed it necessary to consider the effect of the order or decree confirming the sale.

4. Of course the plaintiffs could not recover, upon a legal title, as remaindermen under the will of Elias C. Jenkins; for the testator did not devise this land in remainder to them, and could not have done so, as he did not own it at his death. Whether, under the form of action which they adopted, they could have recovered upon proof of an equitable title, against one whose legal title was inferior to their equitable one, it is not necessary to determine. For while the original lot purchased by the trustee named in the will with a portion of the fund which the testator had directed should be invested by him in a home for the sole and separate use of Mrs. Reynolds during her life, with remainder to her children, was, in equity, impressed with the trust declared in the will, instead of the one declared in the deed, this was a secret equity, which could not be asserted against a bona fide purchaser of the premises in dispute, who bought the same upon the faith of the title derived from one who had purchased the original lot from the trustee, under a sale duly authorized by the court, in a proceeding in which the court was dealing with the trust estate created by the deed which conveyed the legal title from Calhoun to the trustee. The defendant testified that he did not know of or hear of the will of Elias C. Jenkins when he bought the land, and heard of it only when this suit was filed; and this testimony was uncontradicted. This would have protected him, even if it had

been shown that the original purchaser of the land from the trustee was affected with notice of the plaintiffs' equity therein. Besides, the defendant would have been protected even if he himself had notice of the secret equity of the plaintiffs at the time he bought the land, if any one of his predecessors in title was a bona fide purchaser, without notice of such equity; and presumably all of them were, there being no evidence even tending to show that any one of them was not. *Truluck* v. *Peeples,* 3 *Ga.* 446; *Colquitt* v. *Thomas,* 8 *Ga.* 258; *Lee* v. *Cato,* 27 *Ga.* 637 (73 Am. D. 746); *Douglas* v. *McCrackin,* 52 *Ga.* 596; *Ashmore* v. *Whatley,* 99 *Ga.* 150 (24 S. E. 941).

5. It follows from foregoing that the court did not err in directing a verdict in favor of the defendant, as such a verdict was demanded by the evidence.

*Judgment affirmed. All the Justices concur.*

EVANS, LUMPKIN, and ATKINSON, JJ., specially concurring The presumption which the law indulges in favor of a judgment of a court of general jurisdiction, that all prior requisites have been complied with, arises only in cases where the pleadings show that the court had jurisdiction of both person and subject-matter. Since the act of 1876 (Civil Code, §4987) minors are required to be served personally with a copy of the legal proceeding. This code section declares that "when the returns of such service are made to the proper court, and order taken to appoint said minor a guardian ad litem, and such guardian ad litem *agrees to serve, all of which must be shown in the proceedings of the court,* then said minor shall be considered a party to said proceedings." According to our interpretation of this section of the code, the court does not acquire jurisdiction of the minor until the return of service, etc., required by the statute has been entered on the proceedings. *Maryland Casualty Co.* v. *Lanham,* 124 *Ga.* 859 (53 S. E. 395). And where the proceedings do not show the factum of service, the judgment is prima facie void. But this court in *Wagnon* v. *Pease,* 104 *Ga.* 417 (30 S. E. 895), in a decision by a unanimous bench, held that an order granting a trustee power to create a mortgage upon the land of his cestui que trust was not void because the record of the proceedings upon which it was based did not affirmatively show that service on the minors had been made. It is noteworthy of remark that in the opinion section 4987 of it

code is not referred to or construed. We are bound by this decision, and therefore must concur in the opinion of the Chief Justice on this point. The two other cases referred to in the opinion are not conclusive on the point upon which they are cited. In the first (*Pease* v. *Wagnon,* 93 *Ga.* 361, 20 S. E. 637) it did not appear that the parties to the order were minors; and it was only decided that as against a general demurrer an allegation that a mortgage created by the trustee by virtue of an order of the superior court empowering the trustee to mortgage was good, where the proceedings were not set out in the pleadings. In the latter case (*Reinhart* v. *Blackshear,* 105 *Ga.* 799, 31 S. E. 748), the order was granted prior to the act of 1876.