SOUTHEASTERN PIPE-LINE COMPANY *et al. v.* GARRETT, solicitor-general, *ex rel.* LeSUEUR *et al.*

818

Nos. 13797, 13843. September 15, 1941.
Rehearing denied September 26, 1941.

820

*Hirsch, Smith, Kilpatrick, Clay & Cody,* and *Martin, Martin & Snow,* for plaintiffs in error.

*Charles H. Garrett, solicitor-general, George B. Culpepper Jr.,* and *Powell, Goldstein, Frazer & Murphy,* contra.

BELL and JENKINS, Justices. The first and second divisions of this opinion will deal solely with case No. 13,797.

The defendant in error moved to dismiss the writ of error, for reasons indicated in the preceding statement. Counsel for the plaintiffs in error concede that the motion to dismiss is well taken, so far as it relates to the exceptions to the order granting an interlocutory injunction; it appearing that the case has since proceeded to trial, and that a verdict and a decree in favor of the plaintiff were rendered. Accordingly, no further reference need be made to

these exceptions. *Unity Cotton Mills* v. *Dunson,* 131 *Ga.* 258 (2) (62 S. E. 179) ; *Holtman* v. *Knowles,* 141 *Ga.* 613 (3) (81 S. E. 852).

The other questions raised by the motion to dismiss require consideration of a constitutional amendment proposed by the General Assembly by an act or resolution of March 24, 1939, and ratified in June of the same year. Ga. L. 1939, pp. 78-79. The contention of movant is that since the order of February 26, 1941, overruling the demurrer to the petition, was passed in connection with the interlocutory hearing, it was a valid judgment under the act of 1925 (Ga. L. 1925, p. 97, Code, § 81-1002), but that the subsequent orders were void as having been rendered in vacation without authority, and therefore the first order, to which no exceptions were taken, stands as the law of the case, and as such is controlling, notwithstanding the exceptions to the order of April 1, by which the judge again overruled the demurrer, after setting aside his first order on a motion for reconsideration. It is thus insisted that these exceptions present only a moot question, since in no event could they be given effect, in view of what is claimed to be the law of the case.

By the amendment of 1939 it was declared that the judges of the superior court "may, on reasonable notice to the parties, at any time, in vacation, at chambers, hear and determine, by interlocutory or final judgment, any matter or issue, where a jury verdict is not required, or may be waived." Whether the motion to dismiss might have been good under the law as it existed before the adoption of this amendment, we think the amendment enlarged to some extent the jurisdiction of the judges of the superior court as to the hearing and determination of matters in vacation. It is apparently addressed to the courts, and not the General Assembly; and while it does not define reasonable notice or declare how it should be given, the requirement as to notice relates to due process and could be made solely a judicial matter. *Simpson* v. *Bradley,* 189 *Ga.* 316, 319 (5 S. E. 2d, 893) ; *Piggly-Wiggly Georgia Co.* v. *May Investing Corporation,* 189 *Ga.* 477 (3) (6 S. E. 2d, 579) ; *Hutcheson Manufacturing Co.* v. *Chandler,* 29 *Ga. App.* 726, 730 (116 S. E. 849). It is our opinion that under the terms of this amendment the judge is empowered at least; for sufficient cause and on proper pleading, to vacate and set aside any order or judgment

which he was theretofore authorized by law to render in vacation and which he did actually render during the same vacation period, and that to this extent it is self-executing (*Smith* v. *Joiner,* 27 *Ga.* 65; *Arnett* v. *Board of Commissioners,* 75 *Ga.* 782 (1 *a*); 11 Am. Jur. 688-690; 16 C. J. S. 98-121); also that in such case the judge will act as a court of general jurisdiction where previously his authority or jurisdiction may have been limited or conditional. Compare Code, §§ 24-2618, 24-2619, 24-2622. A necessary corollary is, that any judgment authorized by the amendment may be attended by a presumption of regularity, which could not be indulged where the jurisdiction is special or limited. *Jones* v. *Smith,* 120 *Ga.* 642 (48 S. E. 134); *Gray* v. *McNeal,* 12 *Ga.* 424; 21 C. J. S. 149-153, § 96.

The matter here did not require a jury trial, but involved questions of law raised by a demurrer. Under the Code, § 81-1002 (Ga. L. 1925, p. 97), the judge was authorized to pass on the demurrer at the interlocutory hearing. He exercised this authority, overruling the demurrer on February 26, 1941, after taking the case under advisement. *Central Railroad & Banking Co.* v. *Farley,* 89 *Ga.* 180 (15 S. E. 34); *Andrews* v. *State,* 21 *Ga. App.* 498 (94 S. E. 583); *Blakely Hardwood Lumber Co.* v. *Reynolds Lumber Co.,* 173 *Ga.* 602 (2) (160 S. E. 775). On March 7, on motion of the defendant, the order was set aside and vacated. This motion being in writing, there was not an absence of pleading. On April 1, a third order was passed, which again overruled the demurrer. All of these orders were passed in vacation, between the January and May terms of the superior court of Peach County. They were thus passed after the first or appearance term (*Turner* v. *Cates,* 90 *Ga.* 731, 738 (16 S. E. 971); *Foster* v. *Foster,* 178 *Ga.* 791 (174 S. E. 532)); and following their rendition there was no adjournment of a term, such as might have complicated the situation. *McCandless* v. *Conley,* 115 *Ga.* 48 (41 S. E. 256); *Crowell* v. *Crowell,* 191 *Ga.* 36 (11 S. E. 2d, 190). Under the particular and limited facts appearing, we think the amendment of 1939 should be given application. So applying it, we have the following situation:

It is not insisted that the motion of the defendant on which the original order was set aside or vacated was considered or acted upon without reasonable notice to the opposite party, or that the judg-

ment ultimately rendered was without such notice. The record is silent as to notice, and in the circumstances reasonable and proper notice to the parties, whatever kind may have been required, will be presumed under the principle that any judgment of a court of general jurisdiction will be presumed valid until the contrary appears. *Woodbery* v. *Atlas Realty Co.,* 148 *Ga.* 712 (4) (98 S. E. 472); *Green* v. *Spires,* 189 *Ga.* 719 (2), 722 (7 S. E. 246). This presumption prevails in favor of judgments rendered in vacation, as well as those rendered in term, where the matter so dealt with in vacation was one of which the judge had jurisdiction in vacation to the same extent as in term. *Pease* v. *Wagnon,* 93 *Ga.* 361 (20 S. E. 637); *Peavy* v. *Dure,* 131 *Ga.* 104 (2, 3) (62 S. E. 47).

The motion to dismiss amounts to a collateral attack, and should not be sustained unless the judgments assailed therein are void. This does not appear. See, in this connection, *Milner* v. *Neel,* 114 *Ga.* 118 (2, 3), (30 S. E. 890); *Hill* v. *First National Bank of Reynolds,* 160 *Ga.* 883 (129 S. E. 285); *Avery* v. *State,* 4 *Ga. App.* 460 (61 S. E. 839).

We agree that in so far as the amendment of 1939 requires construction it should be studied in the light of its background, including the former law and judicial decisions; and we have so proceeded in reaching the conclusion stated. We have stated that the amendment is so far self-executing as to cover the present situation; but just what further change or changes, in any, it may have made can be properly determined only as the questions arise in future cases. It may or may not have changed the former law as to the existence of terms and the maturity of matters for trial thereby, and what of the rule as to the finality of judgments after adjournment? See *East Tenn., Va. & Ga. Ry. Co.* v. *Greene,* 95 *Ga.* 35 (22 S. E. 36). These and other important questions may in the future require solution. They are not in the present case, however, and we mention them here mainly to exclude them and thus to guard against mistake as to the scope of our present ruling. As bearing generally on construction, see *Park* v. *Candler,* 114 *Ga.* 466 (40 S. E. 523); *Atlantic Coast Line Railroad Co.* v. *Georgia Sweet Potato Growers Association,* 171 *Ga.* 30 (1, 5) (154 S. E. 698); *Botts* v. *Southeastern Pipe-Line Co.,* 190 *Ga.* 689, 700 (10 S. E. 2d, 375); 16 C. J. S. 51-77, §§ 15-36.

Whether the amendment of 1939, which was not invoked or dealt

826

with in *Galloway* v. *Mitchell County Electric Corporation*, 190 *Ga.* 428 (9 S. E. 2d, 903), and *Deen* v. *Baxley State Bank*, 192 *Ga.* 300 (15 S. E. 2d, 194), would have been applicable in those cases, it could not have affected the result in either of them, but, if applicable, would have fortified the conclusions there reached. See *Revels* v. *Kilgo*, 157 *Ga.* 39 (121 S. E. 209).

■ We consider next the general grounds of the demurrer. The petition alleged, in effect, that by conveyances from the abutting owners the State holds the fee-simple title to the lands at all points where the defendant has crossed or is about to cross the highways with its pipe-line; that the defendant has not been authorized by the State of Georgia, or by any one having authority to act for it, so to use the highways of the State; and that the appropriations of said highways to the private use of said company will constitute a purpresture and a public nuisance.

Irrespective of any question as to the nature of the title or as to permit, we are of the opinion that the petition did not state a case for action by the solicitor-general. In order for a solicitor-general to proceed for the public, on information filed with him by citizens, to enjoin a nuisance under the Code, § 72-202, "the object which it is sought to enjoin must be a public nuisance." *State ex rel. Boykin* v. *Ball Investment Co.*, 191 *Ga.* 382 (2), 389 (12 S. E. 2d, 574).

The petition can not be reasonably construed as showing that any pipe-line has been or will be laid on the top or surface of the highway. *Krueger* v. *MacDougald*, 148 *Ga.* 429 (96 S. E. 867).

The allegations as to the dangerous character of gasoline do not show that the construction and operation of the pipe-line will be a nuisance per se, or will necessarily become a nuisance per accidens. *Standard Oil Co.* v. *Kahn*, 165 *Ga.* 575 (141 S. E. 643); *Warren Co.* v. *Dickson*, 185 *Ga.* 481 (3), 483 (195 S. E. 568). It is also clear that the allegation as to public nuisance is a mere conclusion, based upon the assumption that a purpresture is without more a public nuisance as a matter of law. In fact it is conceded in the brief of the defendant in error that the petition does not allege a nuisance per accidens, and that it is predicated solely upon the theory of a purpresture.

A "purpresture" as defined at common law, and recognized in this and other States, is "when one encroacheth, and makes that

serviceable to himself which belongs to many," as "'when there is a house builded, or an enclosure made of any part of the King's demesne, or of a highway, or a common street, or public water, or such like things,'" or by "'digging a ditch or making a hedge across [a highway] or laying logs of timber in it, or by doing any other act which will render it less commodious to the King's subjects.'" *Mayor &c. of Columbus* v. *Jaques,* 30 *Ga.* 506, 512, and cit. Thus, any encroachment upon a public street or highway is a purpresture; and if the public use is impeded or rendered less commodious, such encroachment is generally not only a purpresture, but also technically a public nuisance, regardless of the degree of interference with the common enjoyment. While there may be language in some decisions indicating that a purpresture is always a public nuisance, the terms are not synonymous. By the great weight of authority, it is not true that every purpresture is a public nuisance. It may or may not be such, according to the particular facts. Although the two may coexist, either may exist without the other. The rule both in reason and by authority is, that, unless the public sustain or may sustain some degree of inconvenience or annoyance in the use of a public highway or street or other public property, there is no public nuisance. See Attorney-General *v.* Evart Booming Co., 34 Mich. 462, 472; People *v.* Vanderbilt, 26 N. Y. 287, 293; People *v.* Park &c. R. Co., 76 Cal. 156 (18 Pac. 143); Becker *v.* Sanitary District of Chicago, 194 Ill. App. 639 (2); Smith *v.* McDowell, 148 Ill. 51 (35 N. E. 141, 22 L. R. A. 393); Cobb *v.* Lincoln Park Com., 202 Ill. 427 (67 N. E. 5, 63 L. R. A. 264, and cit., 95 Am. St. R. 258); The Idlewild (C. C. A.), 64 Fed. 603, 605; State *v.* Marianna, 183 Ark. 927 (39 S. W. 2d, 301, 303; Leitchfield Mercantile Co. *v.* Commonwealth, 143 Ky. 162 (136 S. W. 639, 642); Owens *v.* Atkins, 163 Ark. 82 (259 S. W. 396, 397, 34 A. L. R. 267). See other cases cited in 35 Words & Phrases, 557, 20 R. C. L. 386, § 9, and 46 C. J. 719, § 252, which support the texts in distinguishing between a purpresture and a publc nuisance. See especially editorial notes in 69 Am. St. R. 271, and 107 Am. St. R. 204.

In *Laing* v. *Americus,* 86 *Ga.* 746 (1, 3) (13 S. E. 107), where it was held that a public nuisance existed, there was an actual private obstruction interfering with the public use of a city street. This was likewise the case in *City Council of Augusta* v. *Reynolds,*

122 *Ga.* 754, 756 (50 S. E. 998, 69 L. R. A. 564, 106 Am. St. R. 147), where the obstructions covered four city blocks. However, in the latter decision it was specifically recognized that "permanent structures which do not interfere with travel and which are erected for *public purposes,* such as telegraph and telephone poles, *and the like,* are permissible." (Italics ours.) See also, to like effect that it is not every use by an individual of a street or highway which constitutes a public nuisance: *Simon* v. *Atlanta,* 67 *Ga.* 618, 621, 622 (44 Am. R. 739); *Brooks* v. *Atlanta,* 1 *Ga. App.* 678 (57 S. E. 1081).

In *Rider* v. *Porter,* 147 *Ga.* 760 (95 S. E. 284), it was alleged in the information that the defendant had daily, for several months past, stationed his wagon at a given point on a named public road in the county, placed a peanut roaster and a gasoline engine in the public road, arranged fruits and bottled soft drinks about his wagon on the public road, at which point he exposed for sale and sold his goods "for days at a time" to the public, thus virtually establishing "a place of business in and upon said public road." In that case it was said: "Any permanent structure in a public road which materially interferes with travel therein is a nuisance per se. . . Any obstruction in a public road, permanent in nature or continuously maintained at a particular point on a certain portion of the road, which interferes with the free use of the road by the public, is a public nuisance. At common law 'any contracting or narrowing of the highway is a nuisance.' 1 Russ. Cr. 346. It is immaterial that sufficient space is left on either side of the obstruction for the passage of the public, relatively to the question here decided. The public have the right to the unobstructed use of the whole road as it was acquired by the county. 3 Elliott on Roads and Streets (3d ed.), § 828." The decision was clearly based upon actual obstruction of the traveled portion of the highway. In such case, actual interference or inconvenience is immaterial. Compare *Hanbury* v. *Woodward Lumber Co.,* 98 *Ga.* 54 (2) (26 S. E. 477); *Sanders* v. *Atlanta,* 147 *Ga.* 819 (95 S. E. 695). So, in *Mayor &c. of Columbus* v. *Jaques,* supra, the complaint related to the proposed construction of a market-house in the center of "one of the most public thoroughfares and commonly used streets in the city;" and it was stated: "The nuisance here complained of is of a particular kind, termed in the books a *purpresture.*" Also "'that

all injuries whatsoever, to a highway, as by digging a ditch or making a hedge across it, or laying logs of timber in it, or by doing any other act *which will render it less commodious* to the King's subjects, are public nuisances at common law.'" (Italics ours.) Considered in the light of its facts, the decision in nowise sustains the contention that every purpresture must be treated in law as a public nuisance. Nor do we deduce such conclusion from any of the following cases cited and relied on by counsel for the defendant in error: Hart *v.* Albany, 9 Wend. (N. Y.) 571 (24 Am. D. 165); People *v.* Vanderbilt, 28 N. Y. 396 (84 Am. D. 351); People *v.* Harris, 203 Ill. 272 (67 N. E. 785, 96 Am. St. R. 304); State *v.* Kean, 69 N. H. 122 (45 Atl. 256, 48 L. R. A. 102).

The petition did not allege more than a bare purpresture; and hence did not show a public nuisance. The solicitor-general not being authorized to act on the information of citizens, except in case of a public nuisance (Code, § 72-202), and such not being shown, the petition should have been dismissed on general demurrer. In this view, it is unnecessary to pass on the special demurrers or upon any question as to the authority of the solicitor-general in reference to public nuisances without the limits of his circuit.

■ After issuance of the writ of error to review the judgment overruling the demurrers, and during the pendency of such writ of error, the case proceeded to trial and resulted in a verdict in favor of the plaintiff. A motion for new trial was overruled, and this judgment is brought under review by a separate writ of error (Case No. 13843). The undisputed evidence, consisting of an agreed statement, showed that the proposed pipes for the passage of petroleum would be inserted through and across the area occupied by the highway, merely by boring horizontally four feet beneath the surface, *"without disturbing the surface itself;"* that the products to be so transported would be enclosed not only by a pipe but also an iron casing, and that this is "the usual and standard method . . approved . . by State highway boards and similar bodies." (Italics ours.) Under this evidence and the principles ruled in the preceding division, a finding was demanded as a matter of law that the alleged "purpresture" would not and could not interfere with the public use, and is not a public nuisance.

The ruling just made being controlling, it is unnecessary to determine the nature and character of the title held by the State

830

Highway Board under deeds from landowners, as shown by the evidence. Nor is it necessary to determine whether, even if the pleadings and proof had otherwise shown that the proposed construction would constitute a public nuisance, it would not and could not be so judged in view of the fact that the President of the United States has issued a proclamation declaring an "unlimited national emergency," and under an act of Congress, approved July 30, 1941, has issued a proclamation further declaring that the completion of this particular pipe-line is "necessary for national defense purposes."

It may not be amiss to say that since it appears that the suit was instituted by the solicitor-general without authority, in that no public nuisance is shown, it is not only unnecessary to decide other questions, but as a matter of right they should not be decided.

Since the action should have been dismissed in response to the general demurrer, it might be more appropriate as a matter of procedure to dismiss the writ of error in case No. 13843, with direction that the verdict and final decree in favor of the plaintiff be vacated. *Jones* v. *Hurst,* 91 *Ga.* 338 (3) (17 S. E. 635) ; *Knox* v. *Laird,* 92 *Ga.* 123 (3), 128 (17 S. E. 988) ; *Tate* v. *Goode,* 135 *Ga.* 738 (71 S. E. 571, 33 L. R. A. (N. S.) 310). The practical result, however, will be the same; and in the circumstances we have concluded to pass upon each bill of exceptions, upon its separate and independent merit. As to the right of the defendant to bring the second writ of error, see *Montgomery* v. *King,* 125 *Ga.* 388 (54 S. E. 135) ; *Bandy* v. *Frierson's Sons,* 138 *Ga.* 515 (75 S. E. 626).

*Judgment reversed in both cases. All the Justices concur.*